# IN THE COURT OF APPEALS OF IOWA

No. 20-1324
Filed March 17, 2021

**IN THE INTEREST OF J.M. and J.M.,**
**Minor Children,**

**S.W., Mother,**
        Appellant.

_____

        Appeal from the Iowa District Court for Black Hawk County, David F. Staudt,

Judge.

        A mother appeals the termination of her parental rights.  **AFFIRMED.**

        Linda A. Hall, Cedar Falls, for appellant mother.

        Thomas J. Miller, Attorney General, and Natalie Deerr and Ellen Ramsey-

Kacena, Assistant Attorneys General, for appellee State.

        Tammy L. Banning of the Juvenile Public Defender's Office, Waterloo,

attorney and guardian ad litem for minor children.

        Considered by May, P.J., and Greer and Schumacher, JJ.

**MAY, Presiding Judge.**

A mother appeals the termination of her parental rights to her children, J.M. and J.M., both born in 2019.[1] The mother claims (1) the State failed to make reasonable efforts toward reunification, (2) termination is not in the children's best interests, (3) the juvenile court should have exercised an exception to termination under Iowa Code section 232.116(3)(c) (2020), and (4) the court should have granted the mother additional time to work toward reunification. We affirm.

We review termination proceedings de novo. *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (citation omitted).

We generally use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We must determine: (1) whether grounds for termination have been established, (2) whether termination is in the children's best interests, and (3) whether we should exercise any of the permissive exceptions to termination. *Id.* at 472–73. "However, if a parent does not challenge a step in our analysis, we need not address it." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020). Finally, we address any additional claims brought by the mother. *See In re T.P.*, No. 19-0162, 2019 WL 3317346, at *2 (Iowa Ct. App. July 24, 2019).

---

[1] The juvenile court also terminated the father's parental rights, but he does not appeal.

Here, the juvenile court found grounds authorizing termination pursuant to Iowa Code section 232.116(1)(e), (g), and (h). The mother challenges the court's findings under paragraphs (e) and (h). But she raises no challenge to termination under paragraph (g). So we believe any such challenge is waived. *See, e.g.*, *In re G.N.*, No. 20-1128, 2020 WL 7022388, at *1 (Iowa Ct. App. Nov. 30, 2020) ("The mother's failure to challenge termination under paragraph (e) waives any error as it relates to that ground for termination, and we may affirm on that ground without further analysis."); *see also In re F.H.*, No. 19-0213, 2019 WL 2144780, at *1 (Iowa Ct. App. May 15, 2019); *In re O.B.*, No. 18-1971, 2019 WL 1294456, at *2 (Iowa Ct. App. Mar. 20, 2019); *In re C.R.*, No. 16-0036, 2016 WL 1129268, at *1 (Iowa Ct. App. Mar. 23, 2016).

Under certain statutory grounds for termination, though, our courts have recognized that the State must show reasonable efforts toward reunification "as a part of its ultimate proof" that grounds for termination exist. *See, e.g.*, *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). And here, the mother claims "[t]he State failed to offer the mother reasonable efforts at reunification in failing to timely identify needed services and in failing to implement those services in a timely manner."

But parents must raise their complaints regarding reasonable efforts prior to the termination hearing. *See In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017) ("[P]arents have a responsibility to object when they claim the nature or extent of services is inadequate."); *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) ("If, however, a parent is not satisfied with DHS'[s] response to a request for other services, the parent must come to the court and present this challenge."); *In re O.T.*, No. 18-0837, 2018 WL 3302167, at *2 (Iowa Ct. App. July 5, 2018) ("The

failure to request different or additional . . . services in the juvenile court precludes [the parent's] challenge to the services on appeal."); *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005) (stating the parent has an obligation to demand other, different, or additional services prior to the termination hearing or the issue is considered waived for appeal). While the record shows the mother filed a motion for reasonable efforts, she withdrew it before it was heard by the court. And the mother does not claim she requested any additional services. So the mother did not preserve her reasonable-efforts challenge.

Moreover, bypassing error preservation, we note the mother's claim that DHS "fail[ed] to identify needed services early in the process" is misleading. This case began in February 2019. In April 2020, the juvenile court found the mother "failed to attend random drug testing," "failed to attend mental health treatment," and "failed to complete a substance abuse evaluation or follow through with treatment goals." The mother also "on multiple occasions, canceled her IQ testing appointment or failed to appear for the same" and "failed to engage in parenting education." Additional services could only be identified after the mother completed the necessary evaluations and started attending treatment. Because the mother "fail[ed] to participate in [DHS]'s programming" for more than a year, DHS could not "identify needed services early in the process." We find DHS made reasonable efforts toward reunification.

With the reasonable-efforts issue resolved, we move on to the second step in our analysis, which requires us to determine whether termination is in the children's best interests. We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child,

and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

When determining whether termination is in J.M. and J.M.'s best interests, we look to the mother's past performance as an indicator of the care she is likely to provide in the future. *See In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). And the mother's past performance raises substantial concerns about the future. The mother first became involved with DHS in June 2018 when her older child, M.W., was removed after DHS found the mother failed to provide adequate food. The mother's parental rights were terminated to M.W. in March 2019. Since giving birth to J.M. and J.M. in 2019, the mother has done little to address the concerns that brought her to DHS's attention in the first place.

The mother was provided the opportunity to attend a wide range of parenting education classes to acquire the necessary skills to care for J.M. and J.M. But she consistently failed to participate or follow through with the classes. A DHS worker testified at the termination hearing that the mother continues to lack the "parenting skills" to be "able to comprehend what is necessary to meet a child's basic needs."

Substance abuse has been a significant concern. One of the children tested positive for THC at birth. And despite being ordered by the court, the mother has not completed a substance-abuse evaluation or attended any drug testing. "We presume these missed drug tests would have resulted in positive tests." *In re I.J.,*

No. 20-0036, 2020 WL 1550702, at *2 (Iowa Ct. App. Apr. 1, 2020); *accord In re D.G.*, No. 20-0587, 2020 WL 4499773, at *4 (Iowa Ct. App. Aug. 5, 2020); *In re L.B.*, No. 17-1439, 2017 WL 6027747, at *2 (Iowa Ct. App. Nov. 22, 2017); *In re C.W.*, No. 14-1501, 2014 WL 5865351, at *2 (Iowa Ct. App. Nov. 13, 2014) ("She has missed several drug screens, which are thus presumed 'dirty,' i.e., they would have been positive for illegal substances.").

Also, the mother has not addressed her mental-health needs. As noted, she failed to consistently attend mental-health treatment. She continues to deny her mental-health problems despite numerous diagnoses and receiving social security disability based on those diagnoses.

And, throughout the life of this case, the mother has not been a reliable parent. From January to July 2020, the mother attended only nineteen of the fifty-three visits offered to her.

J.M. and J.M. deserve more. They deserve the stability, permanency, and predictability they can only get through termination. We conclude termination is in their best interests.[2]

We move to our third step, whether we should apply a section 232.116(3) exception to preclude termination. The mother refers to section 232.116 and emphasizes "the close bond [she] had toward her children." From this, we infer the mother is relying on section 232.116(3)(c). It authorizes the court to forgo termination if "[t]here is clear and convincing evidence that the termination would

---

[2] We note the mother's concern that J.M. and J.M. have been placed in separate, "ethnically distinct" foster homes. These placement concerns do not alter our conclusion that termination is in the children's best interests.

be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c).

We decline to apply section 232.116(3)(c). J.M. and J.M. were both removed from the mother's care days after birth. They have never known their mother as their full-time caretaker. And she has been inconsistent at attending visits with them. Any bond between them does not outweigh J.M. and J.M.'s pressing, imperative need for a safe and stable home.

Finally, we address the mother's argument that she should be given an additional six months to work toward reunification. The juvenile court *may* defer termination for a period of six months if it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

Here, the mother claims her progress toward reunification was hampered by the necessary modifications to services resulting from the COVID-19 pandemic. But her involvement with DHS began in June 2018, and this particular case began in February 2019—well before COVID-19 impacted services. And throughout her time with DHS, she has failed to follow recommendations and court orders. The mother is "not a parent whose hard work placed her on the threshold of reunification only to be thwarted by a once-in-a-lifetime event." *In re E.A.*, No. 20-0849, 2020 WL 4498164, at *2 (Iowa Ct. App. Aug. 5, 2020). Rather, she "is a parent who was given ample time to gain the skills necessary for reunification but simply failed to progress, pandemic or no pandemic." *Id.*

The mother also argues "[t]he lack of face-to-face interaction with her children deprived [her] of critical time to achieve the goals toward reunification." But again, from January to July 2020, the mother only attended about thirty-six percent of the offered visits with her children. And the majority of these visits would have been in person. So the impact of COVID-19 on services and visits does not persuade us that the mother should be given additional time.

After considering the record as a whole, and especially the mother's lack of progress in the last two years, we cannot point to any "specific factors, conditions, or expected behavioral change" that would likely eliminate the need for removal "at the end of [an] additional six-month period." Iowa Code § 232.104(2)(b). So we do not believe further delay is appropriate.

We affirm the juvenile court's order terminating the mother's parental rights.

**AFFIRMED.**